IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| LARRY RUEGGE, | ) | |
| --- | --- | --- |
| Petitioner, | ) | 4:15CV3046 |
| v. | ) | |
| BRIAN GAGE, | ) | MEMORANDUM AND ORDER |
| Respondent. | ) | |

Larry Ruegge (Ruegge) is a habitual offender. Summarized and condensed, he brings this § 2254 habeas petition attacking counsel's representation on direct appeal. He claims that the appellate lawyer failed to attack Ruegge's trial counsel for not calling another lawyer as a witness. That lawyer had interviewed a critical witness who was cooperating with the State against Ruegge. I will deny the motion with prejudice and dismiss it. Briefly, the reasons for my decision are set forth below.

## BACKGROUND

The burglary charge against Ruegge stems from an incident that occurred in October 2010. Evidence adduced at trial revealed that in the early morning hours of October 28, 2010, the office of Sandy View Nursery, a "swine nursery" was burglarized. The office door was pried open such that the side of the door was splintered and the metal pieces around the door's knob were "smashed in." When an employee of the nursery arrived to work that morning, she observed that there were multiple items missing from the office, including a toolbox with numerous tools inside, a nightlight, some batteries, and a case of soda.

The identity of the burglar or burglars was disputed at trial. The State presented evidence that Ruegge burglarized the nursery office along with one of his

acquaintances, Collin O'Connell. The State's key piece of evidence to tie Ruegge to the burglary was the testimony of O'Connell. O'Connell had been given immunity for his testimony. In fact, O'Connell agreed to an immunity deal where he would tell the police about a number of unsolved burglaries not only the burglary at issue in this case. The jury was aware of the immunity deal.

As is pertinent to Ruegge's claim, trial counsel (Mr. Brewster) subjected O'Connell to a withering cross-examination. For example, he got O'Connell to admit that he had spoken with another attorney representing Ruegge (Mr. Hoffman). Specifically, Brewster got O'Connell to admit the following regarding his conversation with Mr. Hoffman:

> Q. And you told Mr. Hoffman that everything you told the police was a lie, didn't you?
> A. Yes.
> Q. And you told him that Mr. Ruegge didn't have anything to do, as far as you knew, with Sandy View Farms; is that right?
> A. Yes.
> Q. And you told him that you had agreed to testify against Mr. Ruegge and then you agreed to convict him; isn't that right?
> A. Yes.

(Filing no. [12-3 at CM/ECF pp. 31](#)-32.)

The prosecutor came back aggressively. On redirect, O'Connell testified this way:

> Q. (BY M R. HERZOG) Actually, there's nothing that you ever told the police that was a lie, is there, in any of the statements that you gave to Deputy Parks when you were interviewed. Did you tell him any lie whatsoever?
> A. No.
> Q. Mr. Hoffman was on your case representing Mr. Ruegge and trying to get you to cooperate with Mr. Hoffman, was he not?

2

>   A. Yes.
>   . . . .
>   Q. When Mr. Brewster here suggests that you were telling -- suggests that you lied to the police, actually, you said that to Mr. Hoffman to get him off your back, didn't you?
>   A. Yes.

(*Id.* at CM/ECF pp. 40-41.)

Brewster did not call Hoffman to testify. This alleged failure is the heart of Ruegge's single claim.

A direct appeal followed. Ruegge had new counsel for the direct appeal, Mr. Borders. While Borders raised various ineffective assistance of counsel claims, he did not raise a claim that Brewster was ineffective for failing to call Hoffman as a witness. The Nebraska Court of Appeals denied the appeal. [*State v. Ruegge*, No. A-12-551, 2013 WL 5366332 (Neb. Ct. App. 2013)](#).

Since Ruegge had new counsel on direct appeal, he apparently recognized that there had been a procedural default under Nebraska law for not raising on direct appeal the failure to call Hoffman as a witness. Ruegge, who was not represented by a lawyer, filed a state post-conviction action attacking his appellate counsel for failing to attack trial counsel regarding the fact that Hoffman was not called by the defense to testify. (Filing no. [11-3 at CM/ECF pp. 38](#)-44.) In that same vein, Ruegge also attacked his trial counsel for not calling Hoffman as a witness. Ruegge's post-conviction motion contained no attachments such as affidavits from Hoffman, Brewster, or Borders or records of Hoffman's interview with O'Connell.

The trial judge also handled the post-conviction action. He specifically inquired of Ruegge whether he had any evidence to present to support his post-conviction petition. The judge asked during a recorded telephone conference, "do you have any

3

evidence that you want to offer" and Ruegge responded: "None that I can think of." (Filing no. [11-5 at CM/ECF p. 6](#).)

The judge denied Ruegge's petition because the failure to call Hoffman was not erroneous or prejudicial inasmuch as Hoffman's testimony would have been cumulative. (Filing no. [11-3 at CM/ECF p. 61](#).) Thus, neither trial counsel nor counsel on the direct appeal could have been ineffective.

The trial judge wrote:

> Defendant argues that Hoffman could have presented the jury with rebuttal evidence to positively refute O'Connell's trial testimony implicating the defendant in the burglary. On cross, O'Connell admitted making all of the foregoing statements to Hoffman. Hoffman's testimony would not add anything to the picture. It would have been cumulative. Hoffman could only confirm that O'Connell made the statements he had already admitted making. That O'Connell made the statements was not an issue.
>
> To prevail, the defendant must demonstrate a reasonable probability that but for his counsel's deficient performance, the result of the proceeding would have been different. The evidence of O'Connell's contradictory statements was before the jury. His credibility was throughly explored, and, in fact, attacked on cross-examination. Hoffman could only have provided cumulative evidence. The court determines that calling Hoffman as a witness would not have affected the outcome of the proceeding.

*Id.*

Ruegge perfected an appeal to the Nebraska Court of Appeals. That court denied Ruegge relief, stating:

Ruegge next based his request for postconviction relief on an assertion that his appellate counsel had been ineffective for failing to specifically assign and argue that trial counsel was ineffective for not calling a particular witness. We agree with the district court that this claim lacks merit.

Ruegge alleged that his trial counsel was ineffective for failing to call an attorney to whom O'Connell had made admissions indicating that he had lied to law enforcement when he had implicated Ruegge in the crimes at issue at trial. Ruegge alleged that if the attorney had been called, he could have testified about whether he or O'Connell had initiated the conversation and could have testified to the fact that O'Connell admitted that he lied to investigators concerning Ruegge's involvement. He alleged that the testimony of an attorney would have been more reliable than that of a "meth addict who [was] trying to save his own skin."

The district court noted that at trial, O'Connell had testified on cross-examination about the statements that he had made to the attorney. O'Connell had admitted during cross-examination that he had told the attorney a number of things, including that he did not know who had been involved in the burglary, that he had lied to law enforcement when he implicated Ruegge in the burglary, that he had felt coerced into making statements implicating Ruegge, and that he had never seen Ruegge burglarize anything.

The testimony that Ruegge has alleged in his motion that could have been presented by the attorney was presented in O'Connell's own testimony. O'Connell admitted to making the very statements that Ruegge alleges his trial counsel was ineffective for not calling the attorney to testify about. Ruegge has not demonstrated why there was any need to have another witness present the same testimony, why failing to present cumulative evidence could be considered deficient performance, or how he might have been prejudiced by the failure of trial counsel to present such cumulative evidence. We agree with the district court that Ruegge was not entitled to postconviction relief on this assertion.

*State v. Ruegge*, No. A-14-197, 2015 WL 151446, at *5 (Neb. Ct. App. 2015), *review denied* (Mar. 11, 2015).

## *ANALYSIS*

As Ruegge appears to recognize in his brief, he has a tough argument to make. He must overcome the general deferential standard of review. That deferential standard of review is especially difficult to overcome when a state court has resolved an ineffective assistance of counsel claim against a habeas petitioner.

### *Deference Under 28 U.S.C. § 2254(d)*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that

6

a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." [28 U.S.C. § 2254(e)(1)](#).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." [*Harrington v. Richter*, 562 U.S. 86, 102 (2011)](#). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

### *The Especially Deferential Strickland Standard*

I will discuss the argument's merits under the two-pronged standard of [*Strickland v. Washington*, 466 U.S. 668 (1984)](#).

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. [*Knowles v. Mirzayance*, 556 U.S. 111 (2009)](#). In *Knowles*, the Justices

7

stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard as incorrect but whether that determination was unreasonable–a substantially higher threshold. . . . And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

Perhaps a different lawyer would have called Hoffman as a witness. Perhaps the jury would have liked to hear from Hoffman. Indeed, the jury asked who initiated the conversation with Hoffman.[1] On the other hand, it is impossible to say with a straight face that Brewster's failure to call Hoffman as a witness fell below the *Strickland* standard or that the failure was prejudicial. As two Nebraska courts have suggested, Brewster's decision was the classic tactical decision.

For example, Brewster may well have worried that if Hoffman was called to testify the very aggressive prosecutor would have been able to get Hoffman to admit that Hoffman initiated the contact[2] and then harried and "hot boxed" the witness until

---

[1]"Members of the jury, I have received your messages, the first of which reads, Who initiated the conversation between Andy Hoffman and Collin? The answer to your question is as follows: You must base your decision upon the evidence that was presented to you during the trial. You must not engage in any speculation or conjecture." (Filing no. 12-3 at CM/ECF p. 122.)

[2]That Hoffman would have had to admit that he initiated the conversation with O'Connell is quite likely since O'Connell was cooperating with the State and he had no incentive to blow his deal by helping the defense. Indeed, when the jury asked the

8

Hoffman got what he wanted. Perhaps Hoffman had notes that would have been especially unhelpful. Perhaps there was a damning audio tape of the conversation. Perhaps, and even worse, there was a video of the interview that would have sullied Brewster's excellent cross examination of the witness.

What is plain is that Brewster beat O'Connell like a speed bag during cross-examination. An experienced trial lawyer knows when not to guild the lily and that is because such a lily can shatter like crystal. In short, Ruegge has not come close to establishing that Brewster's failure to call Hoffman fell below the applicable effectiveness standard. He has also failed to establish that there is a sufficient reason to conclude that the jury would have done something different had Hoffman been called to testify. Ruegge's habeas petition will therefore be denied with prejudice.[3]

### *CERTIFICATE OF APPEALABILITY*

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he

---

question about who initiated the contact, Brewster must have been smiling since the record did not reflect specifically who initiated the contact. That is also undoubtedly why Brewster had no objection to the trial judge's answer to the jury's question. (Filing no. 12-3 at CM/ECF p. 120.)

[3]With respect, and regret, I found Respondent's counsel's brief to be unhelpful. Counsel did not dig into the record. He also asserted a "fair presentment" argument that was at best tangentially relevant. Counsel did not reply to Petitioner's brief and a response would have been helpful. Counsel would do well to emulate the exceptional work of his colleagues Nate Liss, Stacy Faust, and Erin Tangeman. Counsel is warned that if I determine he is "phoning it in" when it comes to federal habeas corpus cases, I will share my concerns with his supervisors.

petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, Petitioner has failed to make a substantial showing of the denial of a constitutional right. I am also not persuaded that the issues raised in the petition or discussed in this opinion are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, I will not issue a certificate of appealability.

IT IS ORDERED that judgment will be entered for the Respondents and against the Petitioner, providing that the Petitioner shall take nothing, and his habeas corpus petition (Filing no. 1) is denied and dismissed with prejudice. No certificate of appealability will be issued. A separate judgment will be entered.

DATED this 29th day of February, 2016.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge